MARK C. AND SALLY BIERHAALDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bierhaalder v. Commissioner
Docket No. 7133-94
United States Tax Court
T.C. Memo 1995-307; 1995 Tax Ct. Memo LEXIS 312; 70 T.C.M. (CCH) 43; July 13, 1995, Filed *312 Decision will be entered for respondent. Mark C. and Sally Bierhaalder, pro se. For respondent: James B. Ausenbaugh. COUVILLION
COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) [1] and Rules 180, 181, and 182. In separate notices of deficiency, respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Petitioner Mark C. Bierhaalder
Addition to Tax Year
Deficiency
Sec. 6651(a)(1) 1990
$ 676
-- 1991
$ 1,191
$ 277
Petitioner Sally Bierhaalder
Addition to Tax
Year
Deficiency
Sec. 6651(a)(1)
1990
$ 405
$ 55
1991
$ 427
--
The issue for decision is whether petitioners are permitted by section 6013(b) to change their filing status for the years at issue from married filing separate *313 to married filing joint. The issue arises because of respondent's determination that, at the time petitioners filed their joint returns for the 2 years in question, petitioners had not paid in full the taxes for the 2 years. Petitioners dispute that determination. Petitioners contend they had made numerous payments to the Internal Revenue Service (IRS) prior to filing the joint returns pursuant to an installment agreement with the IRS and had specifically designated that their payments were to be applied to the 1990 and 1991 tax years such that, at the time petitioners filed their joint returns, the taxes for 1990 and 1991 had been fully paid. The parties submitted this case fully stipulated under Rule 122. All of the stipulated facts are so found, and those facts, with the annexed exhibits, are incorporated herein by reference. At the time the petition was filed, petitioners, husband and wife, were legal residents of Salt Lake City, Utah. On September 24, 1992, Mark C. Bierhaalder (petitioner) filed IRS Forms 1040, U.S. Individual Income Tax Returns (Form 1040 returns) for calendar years 1990 and 1991, with filing status of married filing separate. On October 20, 1992, petitioner *314 Sally Bierhaalder filed a Form 1040 return for calendar year 1990, with filing status of married filing separate. On October 23, 1992, petitioner Sally Bierhaalder filed a Form 1040 return for calendar year 1991, with filing status of married filing separate. On August 13, 1993, petitioners amended their returns for calendar years 1990 and 1991 by filing a Form 1040 return for each of those years with filing status of married filing joint. [2]
*315 Prior to filing the amended returns for 1990 and 1991, petitioner entered into, on February 24, 1993, a written installment agreement with the IRS, pursuant to section 6159, whereby petitioner agreed to make installment payments of $ 400 per month to satisfy Federal income taxes, penalties, and interest owed by petitioner for calendar years 1985, 1989, 1990, and 1991. As provided in the agreement, the total unpaid amount owed for those years was $ 22,987.65. The installment agreement contained a number of "Conditions of this agreement", including: If the Conditions of this agreement are not met, it will be terminated and the entire tax liability may be collected by levy on income, bank accounts, or any other assets, or by seizure of your property. All payments will be applied in the best interest of the United States.
Petitioner made 13 monthly payments of $ 400 each pursuant to the installment agreement. All of the payments were made by bank money order and, on most of the money orders, a "memo line" contained an inscription or designation by petitioner for application of the payments either to petitioner's 1990 or 1991 taxes. In addition to these installment payments, *316 petitioners' joint 1993 Federal income tax return showed an overpayment of taxes for that year. On that return, petitioners directed that the overpayment be applied to their 1989 taxes. In response to an inquiry made by petitioners, the IRS advised petitioners by letter that their 1993 overpayment would be applied toward payment of balances owed for the years 1985 through 1991, and that such overpayment would be applied to the oldest year first. In fact, unknown to petitioners at the time, all of the installment payments made by petitioner were applied by the IRS to the oldest tax year instead of the designation by petitioner for application of such payments to the 1990 and 1991 tax years. The record shows that, had the installment payments been applied by the IRS as designated by petitioner, the taxes of petitioners for the years 1990 and 1991 would have been fully paid at the time petitioners filed their joint returns for 1990 and 1991. Respondent determined that petitioners could not change their filing status for 1990 and 1991 from married filing separate to married filing joint because petitioners had not fully paid the tax shown on their joint return for each of those years, *317 as required by section 6013(b)(2)(A). Petitioners contend that the taxes shown on their joint returns for 1990 and 1991 were paid because petitioner made sufficient prior payments designated to be applied to the 1990 and 1991 tax years. Respondent contends the payments could not be designated by petitioner because the agreement, binding on both parties, stated that "All payments will be applied in the best interest of the United States". In this respect, respondent applied the installment payments against the oldest tax liability, beginning with the year 1985 and proceeding forward to the other years as installments were paid. With this application of the payments, petitioner had not paid a sufficient amount to cover the tax liabilities for 1990 and 1991 at the time petitioners filed the joint returns for 1990 and 1991. Since the taxes for 1990 and 1991 shown on petitioners' joint returns were not paid, respondent determined that petitioners could not change their filing status for 1990 and 1991 from married filing separate to married filing joint. The ability of married taxpayers to change their filing status from married filing separate to married filing joint is governed by section *318 6013(b), which, in pertinent part, provides: (1) In General. -- Except as provided in paragraph (2), if an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse under subsection (a) and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year. A joint return filed by the husband and wife under this subsection shall constitute the return of the husband and wife for such taxable year, and all payments, credits, refunds, or other repayments made or allowed with respect to the separate return of either spouse for such taxable year shall be taken into account in determining the extent to which the tax based upon the joint return has been paid. * * * (2) Limitations for Making of Election. -- The election provided for in paragraph (1) may not be made -- (A) unless there is paid in full at or before the time of the filing of the joint return the amount shown as tax upon such joint return; * * * Pursuant to section 6013(b), quoted above, petitioners could change their filing status from married *319 filing separate to married filing joint if the amount of tax shown on their 1990 and 1991 joint Federal income tax returns had been timely paid. In this case, whether petitioners paid the amount of tax shown on their joint returns for those 2 years depends on whether petitioner could designate the payments he made under the installment agreement be applied in payment of the taxes owed for 1990 and 1991. [3]
*320 In general, a taxpayer making a voluntary payment has the right to direct its application to whatever tax liability he chooses.[4]; O'Dell v. united . However, where the payments are made pursuant to an agreement, the parties are bound by such agreement and the terms of the agreement govern. See Times v. united . In this case, the parties agree that, pursuant to the language of the installment agreement, the IRS could apply the installment payments in the "best interest of the United States". The agreement contains no provision defining that phrase or otherwise indicating how the installments were to be applied. Respondent interpreted this phrase to mean that the IRS was entitled to follow its ordinary procedure of applying payments to the oldest tax liability first, and that the agreement superseded petitioner's later attempts to designate how his payments were to be applied. The Court agrees with respondent. The IRS has discretion in determining *321 whether to enter into an installment agreement with a taxpayer. In deciding to enter into an agreement, the IRS is entitled to make certain demands of the taxpayer, such as requiring a particular application of the payments. At the same time, however, the taxpayer is entitled to negotiate with the IRS on the terms of the installment agreement. The agreement at issue in this case did not provide how the payments were to be applied except that all payments were to be applied "in the best interest of the United States". Although what is "in the best interest of the United States" is not defined in the agreement, this Court will not second guess the decision of the IRS to apply the payments in the customary fashion whereby the oldest liability is paid first. The Court assumes that the application method followed by the IRS was a method deemed by the IRS to be "in the best interest of the United States". There is no evidence that the IRS breached the installment agreement by applying the payments in this manner. Petitioner is bound by the terms of the agreement that he entered into. Petitioner did not retain the right to designate the application of the payments made pursuant to the installment *322 agreement. In light of respondent's application of the payments to petitioner's oldest tax liability first, the amount of tax shown on petitioners' 1990 and 1991 joint Federal income tax returns had not been paid at the time the joint returns were filed. Therefore, petitioners could not, under section 6013(b)(2)(a), change their filing status on those returns from married filing separate to married filing joint. Respondent is, therefore, sustained. Petitioners did not challenge the other adjustments in the notices of deficiency. *323 Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners have not challenged respondent's determination that the returns filed by petitioners as married, filing separate, were not timely filed, and, therefore, the additions to tax under sec. 6651(a)(1) as to petitioner Mark C. Bierhaalder for 1991 and as to petitioner Sally C. Bierhaalder for 1990 are not at issue. Although it appears from the record that the return of petitioner Mark C. Bierhaalder for 1990 and that of petitioner Sally Bierhaalder for 1991 were also not timely filed, respondent made no determination of the late filing addition to tax for those returns.↩
3. The installment agreement was entered into pursuant to sec. 6159. That section provides, in pertinent part: (a) Authorization of Agreements. -- The Secretary is authorized to enter into written agreements with any taxpayer under which such taxpayer is allowed to satisfy liability for payment of any tax in installment payments if the Secretary determines that such agreement will facilitate collection of such liability. (b) Extent to Which Agreements Remain in Effect. -- (1) In General. -- Except as otherwise provided in this subsection, any agreement entered into by the Secretary under subsection (a) shall remain in effect for the term of the agreement.↩
4. The payments made pursuant to the installment agreement here do not appear to fall within the definition of an involuntary payment as set forth by this Court in : "An involuntary payment of federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor."↩